MOORE, Judge.
Harry Hitchcock appeals from a judgment of the Madison Circuit Court (“the trial court”) ordering the forfeiture of Hitchcock’s 2010 Chevrolet Camaro automobile. We affirm.

Background

On March 30, 2010, Hitchcock was arrested for possession of marijuana and for driving under the influence (“DUI”); the marijuana was found in the 2010 Chevrolet Camaro in which Hitchcock was sitting at the time of his arrest. On April 7, 2010, the State of Alabama initiated forfeiture proceedings, pursuant to Ala.Code 1975, § 20-2-93, against the Chevrolet Camaro. Hitchcock answered the complaint, admitting that he was the owner of the Camaro but denying that it was subject to forfeiture.
On April 18, 2011, Hitchcock entered a guilty plea to possession of marijuana in the second degree, a Class A misdemean- or. He was sentenced to serve one year in jail, but that sentence was suspended, conditioned on his successfully completing two years’ supervised probation and paying certain assessed fines. The DUI charge was nolle prossed by the State.
On March 9, 2012, Hitchcock, through legal counsel, moved for a judgment as a matter of law in the forfeiture action. On March 12, 2012, the trial court conducted an ore tenus hearing on the State’s forfeiture complaint, and, on March 14, 2012, the trial court entered a judgment ordering the forfeiture of the Camaro. The trial court specifically found that Hitchcock had used the Camaro to transport controlled substances and that the forfei *898 ture of the Camaro was reasonable and was not excessive in light of the offense charged and the amount and packaging of the drugs found in the vehicle. Hitchcock timely appealed that judgment.

Evidentiary Background

The evidence presented at the March 12, 2012, trial established the following. Officer Tanner Wilkerson testified that, on March 30, 2010, he received a report that a person was sitting in a Camaro smoking marijuana at the “skate park.” Wilkerson testified that he proceeded to the skate park and found Hitchcock sitting in a 2010 Camaro automobile. According to Wilkerson, he approached Hitchcock, who stated that he had just arrived in town from Florida to visit a friend; Wilkerson testified that Hitchcock could not or would not identify the friend or where the friend lived. Wilkerson testified that, while talking with Hitchcock, he smelled what he believed to be marijuana and alcohol. According to Wilkerson, Hitchcock admitted that he had consumed a “rum and Coke” and that he had smoked marijuana before Wilkerson arrived on the scene.
Wilkerson testified that, after conducting a field-sobriety test, he searched the Camaro and found a hand-rolled cigarette containing what he believed to be marijuana. Wilkerson testified that his backup officer had located additional marijuana in the Camaro. Wilkerson stated that he had also found a cup containing the remains of a rum and Coke mixed drink in the Cama-ro. Wilkerson testified that Hitchcock had been arrested and charged with possession of marijuana and DUI.
Investigator Ted Thiele testified that, on March 30, 2010, he had accompanied Officer Wilkerson to the skate park. Thiele testified that he had found a blue and white cooler in the trunk of the Camaro and that, inside the cooler, he had found a large, clear “Ziploek” bag. Thiele testified that, inside the Ziploek bag, he found four separate bags of a green, leafy substance that he believed to be marijuana. According to Thiele, subsequent toxicology testing confirmed that the substance was, in fact, marijuana weighing approximately two ounces. According to Thiele, after Hitchcock was arrested, the Camaro was towed to the police station.
Nathan Beard testified that he is employed as an investigator by the Madison Police Department and that, on March 30, 2010, he also went to the skate park to assist in the search of the Camaro. Beard testified that he had examined the marijuana that was found in the Camaro and had observed that it was individually wrapped, which, Beard testified, was “typical of a ‘for sale’ product”; he admitted, however, that the marijuana could also have been for personal use and simply packaged that way. Beard testified that Hitchcock had no luggage or personal items with him in the Camaro, which would be expected if Hitchcock was in Madison County on a personal visit from Florida, and that the Camaro showed no insects or dirt or other indications that it recently had traveled any distance from out of state.
Beard testified that the value of the marijuana seized from the Camaro depended on whether it was broken down by grams or ounces. According to Beard, if it was broken down into ounces, it would be worth $100 per ounce, but if it was broken down into grams, it would be worth approximately $20 per gram. According to Beard, 28 grams equals 1 ounce. Beard testified that the toxicology report indicated that the marijuana seized from the *899 Camaro weighed approximately 26 grams.[1] Beard testified that he had worked as a narcotics officer for approximately two years.
The State rested its case, and Hitchcock moved for a judgment as a matter of law, asserting that the State had failed to establish that he was the owner of the Cama-ro; that the seizure of the Camaro violated Ex parte Kelley, 766 So.2d 8S7 (Ala.1999); that the State had failed to timely prosecute its forfeiture case; and that, because the Alabama statutes had improperly classified marijuana as a Schedule I controlled substance, the seizure violated his constitutional rights. The trial court denied Hitchcock’s motion.
Hitchcock then testified on his own behalf. He testified that he is a retired Alabama and Florida high-school teacher. He stated that he lives in Florida but that, on March 30, 2010, he had driven to Madison County to visit a friend. Hitchcock admitted that he had purchased the marijuana in Madison County on that date, but he also claimed that it was “like a medicine” to him because it helped him deal with pain caused by peripheral neuropathy in his feet. Hitchcock testified that the marijuana in his possession had been for his personal use. He explained that the marijuana had been bagged separately because he had three or four varieties of marijuana, which he identified as “Tangerine Dream,” “Pineapple Chunk,” “Northern Lights,” and a possible fourth variety that he could not recall.
Hitchcock denied purchasing the Cama-ro with funds from the sale of marijuana or other controlled substances; he testified that he had purchased the Camaro using money he had received from a trust established by his mother. He offered into evidence sworn affidavits from the trustee of a revocable living trust that had been established by Hitchcock’s mother; according to the affidavits, Hitchcock was a beneficiary of that trust and had received funds from it.[2] Hitchcock introduced into evidence documents establishing that the Camaro had been new when he purchased it in November 2009 for a total of $32,129. The State stipulated that the value of the Camaro was as shown in those documents.

Analysis

Hitchcock first argues that the judgment must be reversed because the State failed to establish that he owned the Camaro. Hitchcock, however, admitted in his answer to the forfeiture complaint that he was the owner of the Camaro. Thus, to the extent the State was required to establish the legal owner of the Camaro, Hitchcock had stipulated to that fact and did not dispute that fact at trial.
Moreover, in his appellant’s brief, Hitchcock fails to cite any authority to indicate that, in a forfeiture action, the State bears the burden of establishing the ownership of the vehicle. It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are *900 waived.” White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Thus, we need not address that argument further.
We next address Hitchcock’s argument that the State violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to timely bring the forfeiture action to trial. In his brief, Hitchcock has failed to cite any authority in support of that argument, and, as a result, we need not address his argument on appeal. See Asam v. Devereaux, supra; Rule 28(a)(10), Ala. R.App. P.; and White Sands Group, L.L.C. v. PRS II, LLC, supra.
In any event, Ala.Code 1975, § 20-2-93(c), requires only that a forfeiture proceeding be “instituted promptly.”
“ ‘ “The mandate in [§ 20-2-93(c), Ala. Code 1975,] that forfeiture proceedings be instituted promptly is necessary to the statute’s constitutionality.” ’ Adams v. State ex rel. Whetstone, 598 So.2d 967, 969 (Ala.Civ.App.1992) (quoting Reach v. State, 530 So.2d 40, 41 (Ala.1988)). Furthermore, a forfeiture proceeding that is not instituted promptly is ineffectual. Adams, 598 So.2d at 969. ‘The term “promptly” has been construed to mean with a reasonable time in light of all the circumstances.’ State v. $17,636.00 in United States Currency, 650 So.2d 900, 901 (Ala.Civ.App.1994).”
State v. Chesson, 948 So.2d 566, 568-69 (Ala.Civ.App.2006). In $3,011 in United States Currency v. State, 845 So.2d 810, 814 (Ala.Civ.App.2002), this court stated that, “[a]s the Supreme Court noted in Lightfoot [v. Floyd, 667 So.2d 56 (Ala. 1995),] ‘[w]hat is “prompt” is decided on the facts of a given case, but a fairly short time frame,’ i.e., less than 7 to 10 months, ‘is evident from the cases addressing the issue.’ 667 So.2d at 66 (collecting cases).”
In this case, Hitchcock’s Camaro was seized on March 30, 2010, the forfeiture action was initiated on April 7, 2010, and Hitchcock was served on April 7, 2010. Thus, the State initiated the forfeiture proceeding approximately one week after seizing the Camaro; that time frame unequivocally complies with the promptness requirement of § 20-2-93(c). Hitchcock has failed to provide any authority in support of his argument that not only must the forfeiture action be initiated in a prompt manner, but the State’s forfeiture action must be brought to trial within a certain time frame as well. We, therefore, need not address that argument. See Rule 28(a)(10), Ala. R.App. P.; Asam v. Devereaux, supra; and White Sands Group, L.L.C. v. PRS II, LLC, supra.
Hitchcock next argues that the judgment ordering the forfeiture of the Camaro violates Ex parte Kelley, 766 So.2d 837 (Ala.1999), in which our supreme court considered whether a civil-forfeiture judgment was so excessive as to violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. “[T]he question whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context de novo review of that question is appropriate.” United States v. Bajakajian, 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).
In Spears v. State, 929 So.2d 477 (Ala.Civ.App.2005), this court discussed Ex parte Kelley, supra, at length and elaborated on the proper application of the proportionality test established in United States v. Bajakajian, supra. Because of its relevance to Hitchcock’s issue, we quote from Spears at length:
“In Ex parte Kelley, 766 So.2d 837, 839-40 (Ala.1999), our supreme court applied the proportionality test set out in *901 United States v. Bajakajian, 524 U.S. 821, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), to determine whether the seizure of a vehicle constituted an excessive fine. The court first set out the general standard — the proportionality test.
“ ‘ “The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality. The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.... Until today, however, we have not articulated a standard for determining whether a punitive forfeiture is constitutionally excessive. We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant’s offense.” ’
“Ex parte Kelley, 766 So.2d at 839 (quoting Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028). Our supreme court then discussed the United States Supreme Court’s explanation of how to apply the proportionality test, which requires a court considering the issue to ‘ “compare the amount of the forfeiture to the gravity of the defendant’s offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant’s offense, it is unconstitutional.”’ Ex parte Kelley, 766 So.2d at 840 (quoting Bajakajian, 524 U.S. at 336-37, 118 S.Ct. 2028).
“The Kelley court then considered whether the forfeiture of Kelley’s $30,000 vehicle constituted an excessive fine in light of the proportionality test. Ex parte Kelley, 766 So.2d at 840. Kelley had been charged with a class C felony offense carrying a potential $5,000 fine. Id. Thus, the court concluded, a forfeiture of the $30,000 vehicle, which was six times the amount of the maximum fine that could be imposed, was ‘grossly disproportional to the gravity of [Kelley’s] offense’ and therefore constituted an excessive fine that violated the Eighth Amendment. Id.”
Spears, 929 So.2d at 478-79.
This court in Spears continued:
“The federal courts have enumerated some possible factors for consideration by a court facing an excessive-fine argument in [a] civil-forfeiture case. See United States v. One 1992 Isuzu Trooper VIN # JACDH58W3N79112571, 51 F.Supp.2d 1268 (M.D.Ala.1999). Among the possible factors are ‘(1) the culpability of the claimant; (2) the gravity of the crime; (3) the sentence that could have been imposed on the perpetrator of the offense; and (4) the nature and value of the property forfeited.’ One 1992 Isuzu Trooper, 51 F.Supp.2d at 1273 n. 4. The claimant in One 1992 Isuzu Trooper was not involved in the drug transaction in which the vehicle was involved, and her boyfriend, who had committed the offense from which the forfeiture action arose, was convicted of ‘simple possession’ and fined only $250. Id. at 1273. Although the court agreed that the ‘actual convictions in a case are not disposi-tive for proportionality review purposes,’ it stated that ‘the relevant factors will vary from case to case.’ Id. at 1273-74. The court in [One 1992 Isuzu Trooper ] ultimately concluded that the forfeiture of the claimant’s vehicle constituted an excessive fine.
“Spears argues that the forfeiture of an item worth three times the possible fine for the offenses charged is an excessive fine under the Eighth Amendment and the proportionality test. He makes much of the fact that, despite being charged with possession of marijuana in the first degree, the amount of marijuana in his possession was not enough to *902 qualify as an amount for sale. In addition, he argues that Bond [a roommate] and the third roommate were not charged; however, some testimony at trial indicated that money seized from the third roommate’s safe was, in fact, condemned as well.
“As noted above, Spears is facing potential fines in the amount of $10,000. The trial court found that his vehicle, although containing several enhanced accessories, had a fair market value of approximately $30,000 at the time of its seizure. Spears admitted that he and Bond used the vehicle to travel to purchase both marijuana and cocaine. The vehicle contained 1.19 grams of marijuana and traces of cocaine residue. Spears had previously been convicted of possession of marijuana. He now stands charged with possession of marijuana in the first degree and unlawful possession of a controlled substance. Based on these facts and circumstances, the trial court concluded that a forfeiture of an item worth three times the maximum possible fines did not constitute an excessive fine under the Eighth Amendment.
“We simply do not agree with Spears that the forfeiture of his vehicle worth three times the amount of the potential fines for the particular offenses with which he is charged is grossly disproportional to the gravity of the offenses. In Harris v. State, 821 So.2d 177, 186 (Ala.2001), our supreme court determined that the forfeiture of $165,501 in currency was not an excessive fine. One of the claimants in Harris, Gregory Binion, was found by the trial court to be ‘ “involved in a high-profit business of narcotics sales.” ’ Harris, 821 So.2d at 186. Based on this factual determination, the Harris court noted that the fines for a cocaine-trafficking conviction ranged from $50,000 to $250,000 depending on the quantity of the cocaine being trafficked. Id. The court stated that it could not conclude that the forfeiture of $165,501 was an excessive fine in light of the range of possible fines provided for by the legislature. Id. Because our supreme court determined that the fine in Harris ($165,501, which was more than three times the lowest possible fine) was not excessive, we likewise conclude that the forfeiture of Spears’s vehicle, worth three times the amount of the fines that could be imposed against Spears, satisfies the proportionality test. Accordingly, we affirm the judgment of the trial court.”
Spears, 929 So.2d at 479-80.
As recognized in Spears, supra, for purposes of a civil-forfeiture proportionality review, the trial court may consider the maximum fine that could have been imposed based on the facts of the case; the trial court is not limited by the maximum fine imposed based on the actual conviction or guilty plea. Additionally, in Spears, supra, and in Harris, supra, a forfeiture of three or more times the amount of the fine that could have been imposed in those cases was affirmed.
The evidence in this case established that Hitchcock was in possession of 26 to 27 grams of marijuana packaged in a manner suitable for sale. Hitchcock had used the Camaro to conceal and to transport the marijuana, he had the marijuana in a public skate park where young people are known to congregate, and, although he lives out of state, he could not or would not identify his specific destination in Alabama at the time of his arrest. Although he was charged with possession of marijuana in the first degree, see Ala.Code 1975, § 13A-12-213 (possession of marijuana for other than personal use), a Class C felony punishable by imprisonment and a fine of not more than $15,000, see Ala.Code 1975, § 13A-5-6(a)(3) (addressing term of im *903 prisonment for a Class C felony), and Ala. Code 1975, § 13A-5-11(a)(3) (stating the maximum fine allowed for a Class C felony), he entered a guilty plea to possession of marijuana in the second degree, see Ala.Code 1975, § 13A-12-214 (possession of marijuana for personal use), a Class A misdemeanor.
Because the value of the Camaro was stipulated to be between $32,000 and $33,000, the forfeiture of the Camaro was approximately twice the value of the maximum applicable fine Hitchcock could have received for his actions on March 30, 2010. Based on Spears, supra, we conclude that the forfeiture in this ease was not excessive and, therefore, does not violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.
Hitchcock next asserts that the forfeiture of the Camaro pursuant to the Alabama Controlled Substances Act, Ala.Code 1975, § 20-2-1 et seq., violates his due-process rights. He asserts that marijuana should no longer be classified as a Schedule I controlled substance, pursuant to Ala. Code 1975, § 20-2-23.[3] Because of the alleged improper classification of marijuana, Hitchcock argues, his property was seized and ordered forfeited in violation of his constitutional rights. We disagree.
Section 20-2-93(a)(5) states, in pertinent part, that the following are subject to forfeiture: “All ... vehicles ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of any property described in subdivision (1) or (2) of this subsection.” Subdivision (1) of § 20-2-93(a) describes “[a]ll controlled substances which have been grown, manufactured, distributed, dispensed or acquired in violation of any law of this state.” (Emphasis added.)
Hitchcock offered no evidence to establish that he had acquired the marijuana that he admittedly possessed in any manner other than in violation of the laws of Alabama, i.e., Hitchcock failed to argue or establish that he had obtained the marijuana in compliance with Ala.Code 1975, § 20-2-110 et seq., or via some other legal means. Thus, whether marijuana is classified as a controlled substance under Schedule I, or under Schedule II, III, IV, or V, it is undisputed that, in Alabama, marijuana is a controlled substance and that Hitchcock had acquired it in violation of the law. Additionally, the evidence presented to the trial court established that Hitchcock had concealed and had transported the illegally acquired marijuana in the Camaro. That is all that is required under the forfeiture statute. Thus, the trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. We acknowledge the discrepancy in the testimony of Thiele and Beard regarding the total weight of marijuana seized from the Camaro. Thiele's testimony was simply an estimate of the amount of marijuana seized, while Beard testified to the actual amount of marijuana seized based on the results of the toxicology report. That discrepancy does not impact our resolution of Hitchcock's appeal.

. The State raised no objection to the admission of those documents into evidence.

. Hitchcock asserts that, pursuant to statute, a Schedule I controlled substance is one that has a "high potential for abuse” and has "no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision.” See Ala.Code 1975, § 20-2-22. Hitchcock argues that marijuana no longer meets the criteria for inclusion under Schedule I because, he asserts, marijuana has medicinal value. In support of that argument, he points to other states that have legalized the medicinal use of marijuana. He also points to the fact that Alabama has authorized research and experimentation with marijuana for the treatment of certain side effects from chemotherapy and glaucoma in the “Alabama Controlled Substances Therapeutic Research Act,” Ala.Code 1975, § 20-2-110 et seq.